**LIBERTY INSURANCE CORPORA-TION and Liberty Mutual Insurance Group, Appellants–Defendants/Counterclaimant/Crossclaimant,**

v.

**FERGUSON STEEL COMPANY, INC., Appellee–Plaintiff/Counterdefendants.**

No. 49A02–0402–CV–172.

Court of Appeals of Indiana.

July 27, 2004.

Mark D. Gerth, Kightlinger & Gray, LLP, Indianapolis, IN, Attorney for Appellants.

James D. Witchger, Ashley A. Howell, Rocap Witchger, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Liberty Insurance ("Liberty") appeals the trial court's entry of summary judgment in favor of Ferguson Steel Company ("Ferguson"). We reverse and remand.

### Issue

The issue before us is whether the trial court properly granted summary judgment in favor of Ferguson on the basis that Ferguson was an additional insured under Liberty's policy on January 6, 2000.

### Facts

On January 6, 2000, Charles H. Nelson, an employee of Steel Frame Erectors, Inc. ("Steel Frame"), suffered injuries while working on a construction project. Work on the construction project began prior to January 6, 2000, pursuant to an informal, unwritten agreement between Ferguson and Steel Frame. Ferguson was the general contractor on the project, and Steel Frame was the sub-contractor.

On the date of Nelson's injury, Liberty insured Duke–Weeks Realty Corporation under a commercial general liability coverage policy. Steel Frame was listed as a named insured on the policy. The policy also contained an Additional Insured Endorsement Clause that identified an insured as:

> [A]ny person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this endorse-

ment ends when your operations for that insured are completed.

App. p. 12.

On January 13, 2000, a written contract was prepared by Ferguson for it to hire Steel Frame to perform steel erection work for the construction project. Pursuant to the written agreement, Steel Frame agreed to purchase and maintain insurance for the duration of the work. This insurance included inter alia comprehensive general liability insurance naming Ferguson as an additional insured. The written agreement also stated that it represented "the entire and integrated agreement between the parties hereto and supersede[d] all prior negotiations, representation, and agreements, either written or oral." App. p. 64.

Steel Frame and Ferguson did not sign the agreement until January 18 and January 21, 2000, respectively. Steel Frame commonly began work on projects for Ferguson prior to preparing and signing a written contract agreement with an understanding that the terms and conditions were in effect from the day work commenced. Ferguson, however, did not follow this practice in its dealings with other contractors. There was no evidence that Liberty was aware of this custom of Steel Frame and Ferguson to delay executing a written contract.

Nelson filed a suit against Ferguson and others. Ferguson filed for declaratory judgment against Liberty, seeking coverage for Nelson's claim. On November 17, 2003, the trial court held a hearing on the summary judgment motions filed by Ferguson and Liberty. Liberty's motion was denied on November 24, 2003, and Ferguson's motion was granted on January 22, 2004. Liberty now appeals.

## Analysis

Summary judgment should be granted only when the designated evidentiary matter shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Review of a summary judgment motion is limited to those materials designated to the trial court. *Reeder v. Harper*, 788 N.E.2d 1236, 1240 (Ind.2003). We look to all facts and the reasonable inferences drawn from those facts, and are compelled to construe those in favor of the non-moving party. *Id.*

Insurance contracts are governed by the same rules of construction as other contracts. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997). Proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment. *Id.* Although ambiguities in insurance policies are construed in favor of the insured, clear and unambiguous policy language must be given its ordinary meaning. *Id.* Failure to define a term in an insurance policy does not necessarily make it ambiguous. *Id.* In insurance policies, an "ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party." *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind.2002). An insurance policy is ambiguous only if a provision is susceptible to more than one reasonable interpretation. *Colonial*, 690 N.E.2d at 667. Our standard of review for the interpretation of unambiguous contracts is de novo without deference to the trial court. *McLinden v. Coco*, 765 N.E.2d 606, 612 (Ind.Ct.App.2002).

Liberty contends that the clear and unambiguous language of the policy requires that Steel Frame's agreement to perform work for Ferguson had to be in writing to

make Ferguson an additional insured on the policy. Absent such a written agreement, Liberty contends that Ferguson was not insured under the policy. It is an undisputed fact that on January 6, 2000, there was no written agreement between Ferguson and Steel Frame for the work on the construction project.

■ Ferguson argues it is sufficient that it had an oral agreement with Steel Frame before January 6, 2000, which was later reduced to writing. However, Liberty's policy unambiguously states that the contract or agreement between Steel Frame and another party must be *in writing* for another party to be an additional insured. When one enters into an agreement with the understanding that neither party is bound until a subsequent formal written document is executed, no enforceable contract exists until the subsequent document is executed. *Wolvos v. Meyer*, 668 N.E.2d 671, 675 (Ind.1996).

Although Liberty's policy does not specifically state that the written agreement between the contracting parties must exist prior to commencement of work, it is clear from the policy that Liberty will not insure a party without a dated written agreement in effect at the time of the claimed loss of injury. "It is well settled that the power to interpret contracts does not extend to changing their terms." *Colonial*, 690 N.E.2d at 669; *see also, e.g., Firemen's Ins. Co. v. Temple Laundry Co.*, 195 Ind. 194, 198, 144 N.E. 838, 839 (1924) ("Where the contract is plain and its meaning clear, the court will not change its evident meaning, by rules of construction, and thereby make a new contract for the parties."). Liberty cannot insure a party without knowledge of the name of the party, the period of coverage, or of its obligation to do so.

■ Liberty was only required to insure Ferguson based on the written agreement and not on the intentions of Ferguson and Steel Frame. The agreement between Ferguson and Steel Frame clearly stated that was "the entire and integrated agreement between the parties hereto and supersede[d] all prior negotiations, representation, and agreements, either written or oral." (App. p. 64) Regardless of the parties' intents, the fact remains that there was no written agreement between Ferguson and Steel Frame on the date of Nelson's injury and, therefore, Liberty did not insure Ferguson on that date. Insurance policies will not be given an unreasonable construction to provide added coverage. *Colonial*, 690 N.E.2d at 669 (citing *Alexander v. Erie Ins. Exch.*, 982 F.2d 1153, 1157 (7th Cir.1993)).

Ferguson further argues that Ferguson and Steel Frame intended to be bound by an oral agreement and that formalizing agreements through writing after commencement of work was a common course of dealing between Ferguson and Steel Frame. However, the course of dealing between Ferguson and Steel Frame does not apply to a third party such as Liberty. Course of dealing is an established pattern of conduct between the parties to a particular transaction. *Black's Law Dictionary* 356 (7th ed.1999). Liberty was not a party to the agreement between Ferguson and Steel Frame. Liberty was a party to a separate agreement with Steel Frame that required a written contract to establish coverage for an additional insured. There was no evidence that Liberty consented to extend coverage in the absence of a writing as required by the terms of the policy. We also note that because Ferguson generally did not practice delaying written agreements with other contractors, it cannot not be considered a customary practice of the construction industry in general.

Liberty has a right to protect itself against responsibility for informal verbal

agreements between contractors by requiring that agreements be in writing. If the trial court's ruling is affirmed, it would allow for the creation of coverage by reducing oral agreements to writing after loss has occurred, in effect making coverage retroactive despite the terms of the policy.

The question for the trial court was not whether there was an enforceable contract between Ferguson and Steel Frame on January 6, 2000, but whether there was an enforceable contract between Ferguson and Liberty with respect to coverage on that date. We conclude, based upon the undisputed material facts and the application of unambiguous policy language, that there was not. Therefore, the trial court erroneously entered summary judgment in favor of Ferguson. With respect to Liberty, based upon identical undisputed evidence, lack of a genuine issue of material fact in the case, and the clear and unambiguous language of the policy, the trial court erroneously denied Liberty's motion for summary judgment.

### Conclusion

There was no written contract in effect on January 6, 2000 between Ferguson and Steel Frame. Thus, Ferguson was not an additional insured on Liberty's policy at that date, pursuant to the clear language of the policy. We reverse the order of summary judgment in favor of Ferguson and remand with instructions to grant summary judgment in favor of Liberty.

Reversed and remanded.

CRONE, J., and BAKER, J., concur.