**William A. ARNETT, and Tammy Arnett, Appellants–Plaintiffs,**

v.

**THE CINCINNATI INSURANCE COMPANY, and Allied Group Insurance d/b/a AMCO Insurance Company, Appellees–Defendants.**

No. 71A05–0605–CV–257.

Court of Appeals of Indiana.

April 16, 2007.

F. Joseph Jaskowiak, Lauren K. Kroeger, Hoeppner Wagner & Evans, LLP, Merrillville, IN, Attorneys for Appellant.

Dane L. Tubergen, James J. Shea, Sr., Hunt Suedhoff Kalamaros, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

William and Tammy Arnett appeal the trial court's entry of summary judgment in favor of Cincinnati Insurance Company ("Cincinnati"). We affirm.

## Issue

The sole restated issue is whether the trial court properly concluded that Cincinnati is not required to pay underinsured motorist benefits to the Arnetts under an umbrella policy after exhaustion of the underinsured motorist limits of an underlying automobile policy.

## Facts

William was an employee of Casteel Construction Corporation ("Casteel"). On August 3, 2002, he was driving a vehicle owned by Casteel when it was struck head-on by another vehicle. William suffered severe, permanent, and disabling injuries. The insurer of the other driver offered William and Tammy its liability policy limits of $50,000.

At the time of the accident, Casteel and its vehicles were insured by a business automobile policy, issued by Cincinnati, that offered uninsured/underinsured motorist ("UM/UIM") coverage up to $1 million. After evaluating the Arnetts' claim, Cincinnati tendered $950,000 to them under the automobile policy, representing the UM/UIM policy limits less the $50,000 already received from the other driver's insurer.

Also at the time of the accident, Casteel was insured under a "Commercial Umbrella Liability Policy" Cincinnati had issued; simultaneously, and under the same policy number and as an "attachment" to the commercial policy, Cincinnati had issued a "Personal Umbrella Liability Policy" to four persons associated with Casteel. App. pp. 459, 482. Casteel's employees acting within the scope of their employment were insured under the commercial umbrella policy. The commercial policy had a limit of $20 million and the personal

policy had a limit of $10 million. Before the policies were issued and as part of the application for umbrella coverage, Vern Casteel, Casteel's president, signed a form stating, "I reject Excess Uninsured/Underinsured Motorists coverage under this policy." *Id.* at 592. The personal umbrella policy contains an express exclusion of UM/UIM coverage, but the commercial policy does not.

The Arnetts sought to recover excess UM/UIM coverage under Cincinnati's commercial umbrella policy it issued to Casteel, claiming their damages exceeded the $1 million they already had recovered. Cincinnati refused to make any payment under the umbrella policy. The Arnetts then sued Cincinnati. On cross-motions for summary judgment, the trial court concluded that Cincinnati was not required to provide excess UM/UIM coverage under the commercial umbrella policy and entered summary judgment in Cincinnati's favor. The Arnetts now appeal.[1]

## Analysis

When reviewing a summary judgment ruling, we apply the same standard as the trial court. *Auto–Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1282 (Ind.2006). Summary judgment shall be entered "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Ind. Trial Rule 56(C)). During our review, all facts and reasonable inferences drawn from them are construed in favor of the nonmoving party. *Id.* We will affirm a grant of summary judgment if it can be sustained on any theory or basis in the record, even if the trial court has entered findings and conclusions in sup-

---

1. The Arnetts have also sued their personal automobile insurer, AMCO Insurance Company. The case against AMCO is not relevant to this appeal and it is stayed while the appeal involving Cincinnati is resolved.

port of its ruling. *Payton v. Hadley,* 819 N.E.2d 432, 438 (Ind.Ct.App.2004).

When addressing an issue involving UM/UIM coverage and umbrella insurance policies, our starting point necessarily is our supreme court's decision in *United National Insurance Company v. DePrizio,* 705 N.E.2d 455 (Ind.1999). There, the court analyzed Indiana Code Section 27–7–5–2, which provides in part:

(a) The insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, or in a supplement to such a policy, the following types of coverage: (1) in limits for bodily injury or death and for injury to or destruction of property not less than those set forth in IC 9–25–4–5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, and for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles for injury to or destruction of property resulting therefrom; or (2) in limits for bodily injury or death not less than those set forth in IC 9–25–

4–5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

The uninsured and underinsured motorist coverages must be provided by insurers for either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured....

The court went on to hold that an umbrella liability policy that does not explicitly provide for UM/UIM coverage, but generally provides coverage for "liability" arising from the ownership, maintenance, or use of motor vehicles, is an "automobile liability policy or motor vehicle liability policy" within the meaning of Section 27–7–5–2(a). *DePrizio,* 705 N.E.2d at 464. "As such, the statute requires such a policy to provide uninsured and underinsured motorist coverage." *Id.*

The court noted elsewhere in the opinion that it was not being called upon to interpret or construe the terms of the particular umbrella policy before it. *Id.* at 457.[2] Additionally, the court observed that " '[e]ven where a given policy fails to provide such uninsured motorist coverage, the insured is entitled to its benefits *unless expressly waived in the manner provided by law.*' " *Id.* at 460 (quoting *Indiana Ins. Co. v. Noble,* 148 Ind.App. 297, 306, 265 N.E.2d 419, 425 (1970)) (emphasis added).

---

**2.** A federal district court had concluded that the umbrella policy's terms did not provide for UM/UIM coverage, but had certified to our supreme court the question of whether Indiana Code Section 27–7–5–2 nonetheless required the provision of such coverage.

Furthermore, "the statute requires insurers to provide uninsured and underinsured motorist coverage 'in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, *unless such coverages have been rejected in writing by the insured.*'" *Id.* (quoting I.C. 27–7–5–2(a)(2)) (emphasis added).

■ We conclude it is clear that the *DePrizio* holding was not intended to apply to umbrella policies where the insured has rejected UM/UIM coverage in writing. That is, *DePrizio* applies as a matter of law and interpretation of Section 27–7–5–2 to read UM/UIM coverage into any umbrella policy that provides excess coverage for an underlying automobile insurance policy, unless the insured rejected such coverage in writing as permitted by the very same statute. We note the following comments by our supreme court:

> We think it highly likely that many consumers choose to purchase umbrella coverage because they are not satisfied that the limits of their primary automobile liability coverage is sufficient protection against the many perils of driving. We also think it is reasonable for those consumers to expect to be able [to] call upon those umbrella policies to supplement their coverage when those perils involve uninsured and underinsured motorists. We find that Indiana's uninsured/underinsured motorist statute mandates that the umbrella carrier answer that call.

*Id.* at 463. If, however, a consumer expressly rejects UM/UIM coverage in writing before an umbrella policy is issued, the consumer should have no reasonable expectation that such coverage will be provided in a policy that by its terms does not provide for such coverage.

There is no disputed question of fact here that Vern Casteel expressly and in writing rejected UM/UIM coverage in compliance with Section 27–7–5–2 when he applied for an umbrella insurance policy. The rejection stated that it applied to policy number CCC 445 02 59, which encompassed both the commercial and personal portions of the umbrella policy. There also is no question here that Vern Casteel was authorized to make such a rejection on behalf of all insureds under the policy. *See* I.C. 27–7–5–2(b)(1) (stating, "Any named insured of an automobile or motor vehicle liability policy has the right, on behalf of all other named insureds and all other insureds, in writing, to … reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section…."). We hold that such rejection takes this case outside of the *DePrizio* rule. The Cincinnati commercial umbrella policy does not include excess UM/UIM coverage as a matter of law and statutory interpretation. Instead, we believe it is necessary to analyze the umbrella policy itself to see whether it provides excess UM/UIM coverage, in accordance with traditional principles of insurance policy interpretation.[3]

■ Construction of insurance contracts is governed by the same rules as other contracts. *Liberty Ins. Corp. v. Ferguson Steel Co., Inc.*, 812 N.E.2d 228, 230 (Ind.Ct.App.2004). "Proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment." *Id.* Ambiguities in insurance poli-

---

**3.** We need not decide whether the written rejection of UM/UIM coverage necessarily excluded such coverage from the commercial umbrella policy as a matter of policy interpretation. We are satisfied, after looking strictly at the four corners of the policy, that it does not provide such coverage.

cies are construed in favor of the insured, but clear and unambiguous policy language must be given its ordinary meaning. *Id.* "An insurance policy is ambiguous only if a provision is susceptible to more than one reasonable interpretation." *Id.*

The commercial umbrella policy states in part, under "Insuring Agreement":

> We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages in excess of the "underlying insurance".... No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Defense and Supplementary Payments.

App. p. 459. "Ultimate net loss" is defined in the policy as "the sum actually paid or payable in the settlement or satisfaction of the insured's legal obligation for damages, covered by this insurance, either by adjudication or compromise." *Id.* at 470. The "Defense and Supplementary Payments" section of the policy does not mention the provision of UM/UIM coverage. The schedule of underlying insurance found on the declarations page of the commercial umbrella policy includes the Cincinnati automobile policy, but the only "applicable limits" the schedule notes is the automobile policy's limits for bodily injury and property damage "liability." *Id.* at 455. The schedule does not list the automobile policy's limits for other coverages such as collision, comprehensive, medical payments, and, most tellingly, UM/UIM coverage.

Taken as a whole, we conclude that the commercial umbrella policy is unambiguous and does not provide for excess UM/UIM coverage. The policy's "Insuring Agreement" and definition of "ultimate net loss" clearly state that it only provides excess coverage for judgments or settlements for which an insured is liable. It

does not, by its plain terms, provide excess coverage for any and all losses an insured might sustain. This would include losses caused by an uninsured or underinsured motorist. The underlying insurance schedule's reference only to the automobile policy's liability coverage limits, and not other coverage limits, including UM/UIM, reinforces this conclusion. In other words, the wording of the umbrella policy is such that it does not incorporate wholesale all of the coverages provided by underlying insurance. It only provides excess liability coverage. Additionally, excess UM/UIM coverage is not expressly provided anywhere in the policy.

■ Our conclusion that Cincinnati's commercial umbrella policy does not provide excess UM/UIM coverage is consistent with this court's previous discussion of the nature of umbrella policies in general:

> "Umbrella or catastrophe coverage has been defined as 'a needed form of coverage which picks up, above the limits of all other contracts, such as automobile and homeowners coverages, to give the security and peace of mind so necessary today *where jury verdicts, or court awards,* may be very substantial, to discharge the unexpected, but potentially bankrupting, *judgment.*'"

*Monroe Guar. Ins. Co. v. Langreck,* 816 N.E.2d 485, 494 (Ind.Ct.App.2004) (quoting *Illinois Emcasco Ins. Co. v. Continental Cas. Co.,* 139 Ill.App.3d 130, 93 Ill.Dec. 666, 487 N.E.2d 110, 112 (1985)) (in turn quoting 8A Appleman, *Insurance Law and Practice,* § 4906, at 348, (1981)) (emphases added). Thus, umbrella policies ordinarily are intended to provide protection against large damages awards for which an insured may be liable, and the umbrella policy in this case was expressly worded to reflect this.

The Arnetts claim that the commercial umbrella policy should be read as providing UM/UIM coverage because the personal umbrella portion of the policy contained an express exclusion of UM/UIM coverage and the commercial portion contained no such exclusion. In our view, the express exclusion of UM/UIM coverage in the personal portion of the umbrella policy was superfluous, especially with respect to the commercial portion of the policy. There is nothing in the language of the commercial umbrella policy that would lead a reasonable insured to believe that it provided excess UM/UIM coverage, and Vern Casteel's express written rejection of such coverage means that it cannot be imputed into the policy under Indiana Code Section 27–7–5–2. The express exclusion of UM/UIM coverage in the personal umbrella policy does not change this.

### Conclusion

Because of Vern Casteel's written rejection of excess UM/UIM coverage the *DePrizio* rule does not apply in this case, and the plain language of Cincinnati's commercial umbrella policy does not provide for excess UM/UIM coverage. The trial court properly concluded that Cincinnati is not required to provide excess UM/UIM coverage to the Arnetts. We affirm the grant of summary judgment in Cincinnati's favor.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.