**LIBERTY MUTUAL FIRE INSURANCE COMPANY, Appellant–Defendant,**

v.

**Roy BEATTY and Vanda Beatty, Appellees–Plaintiffs.**

No. 49A02–0612–CV–1079.

Court of Appeals of Indiana.

July 24, 2007.

Kenneth P. Reese, John C. Trimble, Lewis Wagner, LLP, Indianapolis, IN, Attorneys for Appellant.

Michael E. Simmons, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, Attorney for Appellees.

## OPINION

KIRSCH, Judge.

Liberty Mutual Fire Insurance Company ("Liberty Mutual") appeals the trial court's summary judgment in favor of Roy and Vanda Beatty (the "Beattys"). Liberty Mutual contends the trial court erred when it found that the Beattys were entitled to uninsured motorist/underinsured motorist coverage ("UM/UIM coverage") under their umbrella insurance policy.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The Beattys had an automobile liability policy and an umbrella policy issued by Liberty Mutual. Several years after the Beattys purchased their umbrella policy, and during the active coverage period, Liberty Mutual sent Roy Beatty a document that stated in pertinent part:

INDIANA UNINSURED/UNDERINSURED MOTORISTS COVERAGE IMPORTANT COVERAGE INFORMATION

* * *

## COVERAGE SELECTIONS

Listed below are the available limits of Uninsured Motorists Bodily Injury/Underinsured Motorist Bodily Injury coverage and the additional premium charge associated with each selection. The rates are on a per vehicle basis. Coverage may be selected in an amount less than or equal to your liability limit. $1,000,000 in coverage will be applied, unless this coverage is waived. Please indicate your selection below.

[_____] I reject UM/UIM coverage.
[_____] $1,000,000   $ 62 per vehicle
[_____]  2,000,000   $ 96 per vehicle
[_____]  3,000,000   $136 per vehicle

. . .

* * *

I have read the preceding material and understand that any rejection of these coverages shall apply to all renewals of my policy, regardless of any interim charges, until I request the coverage in writing.[1]

* * *

*Appellant's App.* at 244.

Unsure of the implications of the document, Roy called his Liberty Mutual agent to inquire whether any additional UM/UIM coverage was necessary or recommended. The agent told him that he did not need any more coverage and he should just sign the form and send it back. On July 7, 2003, Roy put an X next to the line "I reject UM/UIM coverage," signed and dated the form, and sent it back. *Id.*

Roy was severely injured in a collision with an uninsured motorist in May 2005. He made a claim under both his automobile and umbrella policies. Liberty Mutual paid the coverage under the automobile policy ($250,000), but denied coverage under the umbrella policy, and the present action ensued. Both Liberty Mutual and the Beattys moved for summary judgment, and the trial court denied Liberty Mutual's motion and granted the Beattys' motion. The trial court found that the purported rejection was ineffective, and the UM/UIM was in effect at the time of the collision. Liberty Mutual now appeals.

## DISCUSSION AND DECISION

■ This appeal, reduced to its essentials, turns on whether the document signed by Roy is an effective rejection of UM/UIM coverage. "Proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment." *Liberty Ins. Corp. v. Ferguson Steel Co.*, 812 N.E.2d 228, 230 (Ind.Ct. App.2004).

---

1. The document also incorrectly listed the "Policy Number" as "LJ124359877300" with an omitted "4" and with an additional "0" being handwritten at the end. *Appellant's*

*App.* at 244. The policy number of the Beattys' umbrella policy was LJ1–243–598773–004 0. *Id.* at 228.

## A. Standard of Review

■ An appropriate disposition of a case by summary judgment occurs when the evidence establishes that there exists no designated issue of material fact and that the moving party is entitled to judgment as a matter of law. *State Auto Ins. Cos. v. Shannon,* 769 N.E.2d 228, 231 (Ind. Ct.App.2002) (citing Ind. Trial Rule 56(C); *Western Reserve Mut. Cas. Co. v. Holland,* 666 N.E.2d 966, 968 (Ind.Ct.App.1996)). When reviewing a trial court's denial on a motion for summary judgment, the appellate court undertakes the same inquiry as the trial court, and this standard of review will not change when there are cross-motions for summary judgment. *Id.* (citing *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.,* 663 N.E.2d 1180, 1183 (Ind.Ct.App.1996), *trans. denied* (1997)). The reviewing court must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* Appellate courts review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Id.* (citing *Ind. Family & Soc. Serv. Admin. v. Radigan,* 755 N.E.2d 617, 620 (Ind.Ct.App. 2001)).

## B. IC 27-7-5-2

On January 1, 1995, the Indiana Legislature enacted IC 27-7-5-2 [2] to require insurance companies to provide UM/UIM coverage in all existing or newly issued automobile policies up to the policy limits. The effect of the legislation granted implied UM/UIM coverage to all existing automobile policies that did not expressly provide UM/UIM coverage. Insurers could only avoid the coverage by obtaining a written rejection from their insured.

## C. Indiana Case Law Regarding IC 27-7-5-2

In 1999, our Supreme Court examined the question of whether an umbrella policy that applied to the insured's automobiles is required to provide the same UM/UIM coverage specified in IC 27-7-5-2.

[A]bsent an explicit statutory exemption to the contrary—an umbrella liability policy that does not provide for [UM/UIM] coverage by its own terms, yet provides coverage for liability arising from the ownership maintenance or use of motor vehicles, is an "automobile liability policy or motor vehicle liability policy" within the meaning of [IC] 27-7-

---

**2.** IC 27-7-5-2 provides in part:

Coverage for bodily injury or death; required provisions; rejection

(a) The insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, or in a supplement to such a policy, the following types of coverage:

\* \* \*

The uninsured and underinsured motorist coverages must be provided by insurers for

either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured. .... Insurers must make underinsured motorist coverage available to all existing policyholders on the date of the first renewal of existing policies that occurs on or after January 1, 1995, and on any policies newly issued or delivered on or after January 1, 1995....

\* \* \*

.... Renewals of policies issued or delivered in this state which have undergone interim policy endorsement or amendment do not constitute newly issued or delivered policies for which the insurer is required to provide the coverages described in this section.

5–2(a). As such, the statute requires such a policy to provide [UM/UIM] coverage.

*United Nat. Ins. Co. v. DePrizio*, 705 N.E.2d 455, 464 (Ind.1999).

Less than two years later, this court addressed whether the insurer was required to offer UM/UIM coverage at the first renewal after the enactment of IC 27–7–5–2 (January 1, 1995). We held that, pursuant to the statute, the insurer was required to offer UM/UIM coverage of at least $50,000 at the time of first renewal on or after January 1, 1995. *Shannon*, 769 N.E.2d at 235.

Then, less than a year later, this court held that "[t]he statute clearly and unambiguously requires a written rejection of the [UM/UIM] coverage for both newly issued policies and post-January 1, 1995, renewal policies." *State Farm Mut. Auto. Ins. Co. v. Steury*, 787 N.E.2d 465, 472 (Ind.Ct.App.2003), *trans. dismissed*. We stated that the holding comported with our Supreme Court's directive in *DePrizio* to liberally construe the policy and read it in a light favorable to the insured. *Id.* (citing *DePrizio*, 705 N.E.2d at 459–60).[3]

Earlier this year, in *Arnett v. Cincinnati Insurance Company*, 864 N.E.2d 366 (Ind.Ct.App.2007), *trans. pending*, we addressed whether IC 27–7–5–2 and *DePrizio* required an insurer to provide an insured with UM/UIM coverage under a commercial umbrella policy. There, the insured expressly rejected UM/UIM coverage prior to the policy's issuance, and the insured included in the policy an express provision excluding the UM/UIM

coverage. *Id.* at 368. We held that because the insured expressly rejected the UM/UIM coverage prior to its issuance, and because the express language of the policy excluded the coverage, the *DePrizio* rule did not apply, and the insured was unable to recover under the commercial umbrella policy. *Id.* at 372.

#### D. The Beattys' Coverage

Here, because of IC 27–7–5–2 and the *DePrizio* rule, UM/UIM coverage was already provided under the Beattys' umbrella policy. That is, from the date of the issuance of their policy, the Beattys, had existing UM/UIM coverage under their umbrella policy for which Liberty Mutual was charging no additional premium. The question before us is whether the document, which Liberty Mutual sent several years after the policy was originally purchased, and which Roy signed, excuses Liberty Mutual from providing UM/UIM coverage under the Beattys' umbrella policy.

■ We interpret the language of a policy similarly to how we interpret the language of a contract: we determine first whether the language of the policy is ambiguous, and if not, we apply its plain and ordinary meaning. *Briles v. Wausau Ins. Cos.*, 858 N.E.2d 208, 213 (Ind.Ct.App. 2006). However, if the policy is ambiguous, we construe it liberally in a light favorable to the insured. *DePrizio*, 705 N.E.2d at 459–60. "An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning." *Briles*, 858 N.E.2d at 213.

---

**3.** Compare *State Farm Fire & Casualty Company v. Garrett*, 783 N.E.2d 329 (Ind.Ct.App. 2003), *trans denied*. There, a married couple applied for and purchased an umbrella policy that covered their automobiles. However, the Husband was the only signatory to the application and the UM/UIM rejection form made part of the application. This court held that the policy was in effect as to both wife and

husband, but that husband's rejection did not affect the other named insured, wife, because wife failed to personally reject the UM/UIM coverage. The Court held that the statutory amendment to IC 27–7–5–2 that allowed any named insured to reject UM/UIM coverage on behalf of the other named insureds was not a clarification but was a change in law that inured to the benefit of the insured.

■ We find the language of the purported rejection was ambiguous at best misleading at worst. It can reasonably be construed to effect an immediate cancellation of the UM/UIM coverage which was already included in the coverage which the Beattys had purchased and for which they had paid a premium. Alternatively, it can be construed to constitute a rejection of such coverage at the time of the next renewal. Finally, it can be construed, as the Beattys and the Liberty Mutual's agent construed it, as an offer for UM/UIM coverage in addition to the UM/UIM coverage that the Beattys already had and for which an additional premium would be charged.

Liberty Mutual suggests that Roy rejected any and all UM/UIM coverage available under the policy. If such were the case, Liberty Mutual offered no consideration to change and remove a material element, i.e., the existing $1,000,000 UM/UIM coverage, of the Beattys' umbrella policy. *See Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 759 (Ind. Ct.App.2002) (written modification of contract requires all essential terms of contract, including consideration). Instead, the rejection was filled out, and the premium remained the same.

Additionally, Liberty Mutual did not change the express language of the Beattys' policy at the time the document was executed or at the time the policy was renewed in October 2003, and again in October 2004. *Cf. Appellant's App.* at 238–43.[4] Had Liberty Mutual desired to exclude any and all UM/UIM coverage based on the *DePrizio* decision, it should have either: 1) secured the written waiver of coverage required under the statute and included the waiver within the policy prior to the commencement of coverage; or 2) if Liberty Mutual wanted to remove UM/UIM coverage during the policy's term, it should have proposed a modification to such effect and offered to reduce the premium to reflect the removed coverage. In either case, it would be clear that the existence or nonexistence of UM/UIM coverage was a negotiated term of the policy.

Appellate courts consistently instruct insurance companies that terms of a policy will be interpreted liberally and read favorably to the insured. *See DePrizio*, 705 N.E.2d at 459–60. Our Supreme Court stated, "[e]ven where a given policy fails to provide such [UM/UIM] coverage, the insured is entitled to its benefits unless expressly waived *in the manner provided by law.*" *Id.* at 460. More particularly, this court has expressed that IC 27–7–5–2 was a remedial measure taken in favor of the insured. *State Farm Mut. Auto. Ins. Co. v. Steury*, 787 N.E.2d 465, 470 (Ind.Ct. App.2003), *trans. dismissed.* Liberty Mutual's presentation of an ambiguous rejection form to Roy during the policy's term that asks whether he would like give up existing coverage for which he has already paid, without consideration was ineffective to waive UM/UIM coverage. Accordingly, we affirm the trial court's finding that the umbrella policy provided UM/UIM coverage, and its entry of summary judgment in favor of the Beattys and against Liberty Mutual.

Affirmed.

DARDEN, J., and MATHIAS, J., concur.

---

4. We note that the organization of appellant's appendix may suggest the document was added to the policy, but a review of the table of contents clearly shows that the document is not a part of the policy nor was there any evidence that a new policy including the document or its terms was given to the Beattys. *See Appellant's App.* at 1, 228–43, 244.