

**FILED**

Jul 14 2016, 8:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffrey B. Fecht
Riley Bennett & Egloff, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Lane C. Siesky
Siesky & Viehe, PC
Evansville, Indiana

ATTORNEYS OF APPELLEE
(INTERVENOR), American
Casualty Company/American
Equity Risk Service

Laurie Goetz Kemp
Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Fireman's Fund Insurance
Company,

*Appellant-Third Party Defendant,*

v.

Matthew W. Ackerman,

*Appellee-Third Party Plaintiff,*

and,

American Casualty Company,

July 14, 2016

Court of Appeals Cause No.
82A01-1509-CT-1350

Appeal from the Vanderburgh
Circuit Court

The Honorable David D. Kiely,
Judge

Trial Court Cause No.
82C01-0911-CT-450

American Equity Risk Service,

*Appellee-Intervenor Defendant*.

**Barnes, Judge.**

# Case Summary

Fireman's Fund Insurance Company ("Fireman's Fund") appeals the trial court's denial of its motion for summary judgment regarding a claim by Matthew W. Ackerman. We reverse and remand.

# Issue

Fireman's Fund raises one issue, which we restate as whether the trial court properly denied its motion for summary judgment regarding underinsured motorist coverage.

# Facts

On January 8, 2009, Ackerman was injured in a motor vehicle accident allegedly caused by Janet Sipes. Ackerman sustained severe injuries in the accident, including the amputation of a leg. At the time of the accident, Ackerman was working for Evansville Marine Service, Inc. ("Evansville Marine"). Evansville Marine had uninsured/underinsured motorist

("UM/UIM") coverage with American Casualty Company of Reading, PA, a subsidiary of CNA ("CNA"), an excess or umbrella policy with Fireman's Fund, and workers' compensation benefits with American Casualty Company/American Equity Risk Service ("AER"). Fireman's Fund first issued an excess liability policy to Evansville Marine in March 2004. Beginning in September 2004, the policy was issued or renewed each year effective September 16th.

[4] Ackerman received the $100,000 policy limits of Sipes's policy with State Farm Insurance, and the $1,000,000 policy limits (minus an offset of $100,000 for the amount paid by State Farm) of Evansville Marine's CNA Policy. Ackerman claims that his damages exceed the amount he has been paid, and this litigation concerns whether the Fireman's Fund policy provides additional UM/UIM coverage.

[5] In November 2009, Sipes filed a complaint against Ackerman, and Ackerman filed a counterclaim against Sipes. AER then filed a motion to intervene related to payments it made to Ackerman under the workers' compensation policy, and the trial court granted the motion. In October 2011, Ackerman filed a motion for leave to file a third-party complaint against Fireman's Fund, which the trial court also granted. Ackerman claimed that he was entitled to UM/UIM coverage under the Fireman's Fund policy.

[6] Fireman's Fund filed a motion for summary judgment. Fireman's Fund argued that the policy did not provide UM/UIM coverage and that UM/UIM

coverage could not be imputed to the policy. Ackerman and AER filed responses to Fireman's Fund's motion for summary judgment. The trial court denied Fireman's Fund's motion for summary judgment. However, pursuant to Fireman's Fund's request, the trial court certified the order for interlocutory appeal. We accepted Fireman's Fund's interlocutory appeal pursuant to Indiana Appellate Rule 14(B).

## Analysis

[7] Fireman's Fund argues that the trial court erred by denying its motion for summary judgment. An appellate court reviewing summary judgment analyzes the issues in the same way as would a trial court. *Pfenning v. Lineman*, 947 N.E.2d 392, 396 (Ind. 2011). A party seeking summary judgment must establish that "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). The party moving for summary judgment bears the initial burden of establishing its entitlement to summary judgment. *Pfenning*, 947 N.E.2d at 396-97. "Only then does the burden fall upon the non-moving party to set forth specific facts demonstrating a genuine issue for trial." *Id.* at 397. The reviewing court must construe the evidence in favor of the non-movant, and resolve all doubts against the moving party. *Id.*

[8] Fireman's Fund argues that its policy issued to Evansville Marine did not contain UM/UIM coverage and that it is entitled to summary judgment. Ackerman and AER argue that UM/UIM coverage was imputed to the policy.

"Insurance contracts 'are governed by the same rules of construction as other contracts.'" *Justice v. Am. Family Mut. Ins. Co.*, 4 N.E.3d 1171, 1175 (Ind. 2014) (quoting *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997)). The interpretation of an insurance contract is a question of law, and we address it de novo. *Id.* Similarly, "the interpretation of a statute is a question of law," and we consider it de novo. *Id.*

[9] The analysis of this issue requires a review of UM/UIM coverage in Indiana, *see* Indiana Code Chapter 27-7-5. "The statute was originally enacted in 1965, *see* 1965 Ind. Acts. ch. 138, § 1, and it required insurers to offer uninsured motorist coverage in an amount equal to the statutory minimum financial responsibility requirements." *Justice*, 4 N.E.3d at 1178. "In 1982, the General Assembly amended it, *see* P.L. 166-1982, § 1, 1982 Ind. Acts 1237, to require 'that insurers not merely offer but provide uninsured motorist coverage in an amount equal to the minimum financial responsibility requirements (but not exceeding the bodily injury and property damage limits) of the insured's policy.'" *Id.* (quoting *United Nat. Ins. Co. v. DePrizio*, 705 N.E.2d 455, 460 (Ind. 1999)). In 1987, the General Assembly amended the statute again, *see* P.L. 391-1987, § 1, 1987 Ind. Acts 3558; this amendment further "broadened the scope of the statute by requiring insurers to provide underinsured motorist coverage in addition to uninsured motorist coverage . . . in limits equal to the limits of liability specified in the bodily injury and property damage provisions of an insured's policy." *Id.*

In 1995, the General Assembly enacted Indiana Code Section 27-7-5-2 to require insurance companies to provide UM/UIM coverage in all existing or newly-issued automobile policies up to the policy limits. *Liberty Mut. Fire Ins. Co. v. Beatty*, 870 N.E.2d 546, 549 (Ind. Ct. App. 2007). "The effect of the legislation granted implied UM/UIM coverage to all existing automobile policies that did not expressly provide UM/UIM coverage." *Id.* "Insurers could only avoid the coverage by obtaining a written rejection from their insured." *Id.*

Then, in 1999, our supreme court decided *DePrizio*, which concerned whether a commercial umbrella or excess liability insurance policy, like the policy at issue here, was required to provide UM/UIM coverage. *DePrizio*, 705 N.E.2d at 457. The court noted that the UM/UIM coverage statute "is a mandatory coverage, full-recovery, remedial statute." *Id.* at 460. Its provisions were to be "considered a part of every automobile liability policy the same as if written therein." *Id.* Moreover, "[e]ven where a given policy fails to provide such uninsured motorist coverage, the insured is entitled to its benefits unless expressly waived in the manner provided by law." *Id.* Our supreme court concluded that, "absent an explicit statutory exemption to the contrary[,] an umbrella liability policy that does not provide for uninsured/underinsured motorist coverage by its own terms, yet provides coverage for liability arising from the ownership maintenance or use of motor vehicles, is an 'automobile liability policy or motor vehicle liability policy' within the meaning of Indiana

Code 27-7-5-2(a)." *Id.* at 464. "As such, the statute requires such a policy to provide uninsured and underinsured motorist coverage." *Id.*

[12] In apparent response to *DePrizio*, effective July 1, 2005, the legislature enacted Indiana Code Section 27-7-5-1.5, which applied to commercial vehicle policies and provided: "(b) This chapter does not require an insurer to make available uninsured motorist or underinsured motorist coverage described in [Indiana Code Section 27-7-5-2] in connection with the issuance of a . . . (2) commercial umbrella or excess liability policy[.]"[1] At the time that the 2008 policy was issued and the time of the accident, Indiana Code Section 27-7-5-2 provided:

> (a)　The insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, or in a supplement to such a policy, the following types of coverage:
>
>> (1)　in limits for bodily injury or death and for injury to or destruction of property not less than those set forth in IC 9-25-4-5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy who are legally entitled to recover damages from owners

---

[1] In 2009, the legislature repealed Indiana Code Section 27-7-5-1.5, effective January 1, 2010.

or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, and for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles for injury to or destruction of property resulting therefrom; or

(2) in limits for bodily injury or death not less than those set forth in IC 9-25-4-5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

The uninsured and underinsured motorist coverages must be provided by insurers for either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured. However, underinsured motorist coverage must be made available in limits of not less than fifty thousand dollars ($50,000). At the insurer's option, the bodily injury liability provisions of the insured's policy may be required to be equal to the insured's underinsured motorist coverage. Insurers may not sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000). Insurers must make underinsured motorist coverage available to all existing policyholders on the date of the first renewal of existing policies that occurs on or after January 1, 1995, and on any policies newly issued or delivered on or after January 1, 1995. Uninsured motorist coverage or

underinsured motorist coverage may be offered by an insurer in an amount exceeding the limits of liability specified in the bodily injury and property damage liability provisions of the insured's policy.

(b)     Any named insured of an automobile or motor vehicle liability policy has the right, on behalf of all other named insureds and all other insureds, in writing, to:

   (1)     reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section; or

   (2)     reject either the uninsured motorist coverage alone or the underinsured motorist coverage alone, if the insurer provides the coverage not rejected separately from the coverage rejected.

No insured may have uninsured motorist property damage liability insurance coverage under this section unless the insured also has uninsured motorist bodily injury liability insurance coverage under this section. Following rejection of either or both uninsured motorist coverage or underinsured motorist coverage, unless later requested in writing, the insurer need not offer uninsured motorist coverage or underinsured motorist coverage in or supplemental to a renewal or replacement policy issued to the same insured by the same insurer or a subsidiary or an affiliate of the originally issuing insurer. Renewals of policies issued or delivered in this state which have undergone interim policy endorsement or amendment do not constitute newly issued or delivered policies for which the insurer is required to provide the coverages described in this section.

[13] The parties do not dispute that, as a result of *DePrizio*, the Fireman's Fund policies provided UIM protection at least until the first renewal of the policy after Indiana Code Section 27-7-5-1.5 went into effect in 2005. This dispute centers on the effect of Indiana Code Sections 27-7-5-1.5 and 27-7-5-2 on the policy. The accident occurred in January 2009, and the Fireman's Fund policy at issue was effective September 16, 2008, to September 16, 2009 ("2008 Policy"). The language of the 2008 Policy expressly did not provide UIM coverage. The question here is whether Fireman's Fund was still required to provide UIM coverage at the time this policy was issued or whether Indiana Code Section 27-7-5-1.5 had eliminated that coverage.

[14] Fireman's Fund argues that Indiana Code Section 27-7-5-1.5(b) applied to the renewal of the policy in September 2008 to eliminate the UIM coverage previously required by *DePrizio*. Ackerman counters that the use of the word "issuance" in the statute means that the statute only applied to newly-issued policies, not renewal policies. According to Ackerman, because Indiana Code Section 27-7-5-1.5(b) is inapplicable, Fireman's Fund was required to obtain a written rejection of UIM coverage pursuant to Indiana Code Section 27-7-5-2. Ackerman also argues that the adoption of Indiana Code Section 27-7-5-1.5(b) "did not obviate the language of I.C. 27-7-5-2(b), which then required (and still yet requires) an insurer to obtain a written rejection of UM and/or UIM coverage by the named insured in order to avoid providing such coverage to its insured in a future policy year." Appellee's Br. p. 16.

[15]    The federal district court addressed this same issue in *Hall v. Travelers Property Cas. Co. of America*, No. 3:08-CV-0007RLYWGH, 2009 WL 1148231 (S.D. Ind. 2009).  There, the district court held:

> Plaintiffs argue that the amended statute applies only to the issuance of "new" policies and not, as in this case, to the issuance of "renewal" policies.  The plain language of the statute does not limit its application to newly issued policies.  Rather, it applies to the "issuance" of any policy, whether entirely new or a renewal following a previous policy.
>
> The plain meaning of the statute must be read in light of Indiana Code § 27-7-6-3, which defines a renewal policy as the "issuance" of a replacement policy.  *See Little v. Progressive Ins.*, 783 N.E.2d 307, 314 (Ind. Ct. App. 2003) (citing *Inman v. Farm Bureau Ins.*, 584 N.E.2d 567, 569 (Ind. Ct. App. 1992)).
>
> Further, Indiana Code § 27-7-5-1.5 must be read in light of the mandatory IUM statute, Indiana Code § 27-7-5-2.  That statutory section begins by defining its application to every auto liability policy delivered or issued for delivery in Indiana.  Ind. Code § 27-7-5-2(a).  The section goes on to make clear that this universe of policies that are "issued" in Indiana includes both "first renewal of existing policies" after the effective date, as well as "newly issued" policies.  *See* Ind. Code § 27-7-5-2(a)(2) ("Insurers must make underinsured motorist coverage available to all existing policyholders on the date of the first renewal of existing policies . . . and on any policies newly issued . . . .").
>
> The legislative intent must be presumed to be the same with respect to Indiana Code § 27-7-5-1.5, *Inman, supra.*, especially because the word "issuance" in the statute is just another form of the word "issued" in Indiana Code § 27-7-5-2.  "Webster's Third New International Dictionary defines 'issuance' as the noun form

of 'issue.'"  *Mining Energy, Inc. v. Dir. OWCP*, 391 F.3d 571, 575 (4th Cir. 2004); *see also In re Auto. Prof'ls, Inc.*, 370 B.R. 161, 171 (Bankr. N.D. Ill. 2007) ("'Issued,' as used in reference to the issuance of an insurance policy, means when the policy is made and delivered, and is in full effect and operation.").

Thus, the meaning of policies that are "issued" in Indiana Code § 27-7-5-2, i.e., both "first issued" policies and "renewals," applies equally to Indiana Code § 27-7-5-1.5, which refers to the "issuance" of policies.  Accordingly, the court finds that Illinois National was not required to provide underinsured motorist coverage in its renewal policy issued to Gohmann after the amended statute took effect.

*Hall*, 2009 WL 1148231, at *8-9.

[16]  Ackerman argues that *Hall* is not controlling because Indiana Code Section 27-7-6-3, upon which the district court relied, is not relevant or applicable to the UM/UIM statutes or commercial policies.  Consequently, Ackerman contends that any reliance on *Hall* is misplaced.  Fireman's Fund argues that *Hall* is "directly on point with the issues in this matter."  Appellant's Br. p. 15.

[17]  We agree with Fireman's Fund and find *Hall* to be persuasive.  Although *DePrizio* had previously required commercial umbrella or excess liability policies to provide UM/UIM coverage, the 2005 enactment of Indiana Code Section 27-7-5-1.5 eliminated that requirement.  The statute provided: "[Indiana Code Chapter 27-7-5] does not require an insurer to make available uninsured motorist or underinsured motorist coverage described in [Indiana Code Section 27-7-5-2] in connection with the issuance of a . . . (2) commercial

umbrella or excess liability policy." The term "issuance" is not explicitly limited to newly-issued policies and encompasses renewal policies. The legislature has shown that it was capable of differentiating between newly-issued or delivered policies and renewal policies, as it did in Indiana Code Section 27-7-5-2, but it did not do so in Indiana Code Section 27-7-5-1.5. As in *Hall*, we conclude that Indiana Code Section 27-7-5-1.5(b) applied to both newly-issued policies and renewal policies. Regardless of whether the 2008 policy was a renewal or a newly issued policy, Fireman's Fund was not required to include UM/UIM coverage in the policy. Both Ackerman and AER assert that a genuine issue of material fact exists as to whether the 2008 policy was a newly issued or renewal policy, but we conclude that fact is not material.

[18] Ackerman also argues that, even if Indiana Code Section 27-7-5-1.5(b) applies, Fireman's Fund was still required to obtain a written rejection of the UM/UIM coverage from the insured. However, Indiana Code Section 27-7-5-1.5(b) specifically stated that the insurer was not required to provide such coverage. It would be inconsistent to require an insurer to obtain a written rejection of coverage that it was not required to offer at all. Consequently, Ackerman's argument fails.

[19] Finally, Ackerman and AER argue that a change in UM/UIM coverage as a result of Indiana Code Section 27-7-5-1.5 was a material change that required the provision of consideration. In support of his argument, Ackerman relies on *Liberty Mut. Fire Ins. Co. v. Beatty*, 870 N.E.2d 546 (Ind. Ct. App. 2007). There,

during the umbrella policy's term, the insurer sent the insured a form for the written rejection of UM/UIM coverage, which the insured signed and returned. The insured was later injured in an accident with an uninsured motorist, and the insurer denied coverage. The issue on appeal was whether the document signed by the insured was an effective rejection of UM/UIM coverage. We held that the rejection form was ambiguous and did not remove UM/UIM coverage. We held:

> Had Liberty Mutual desired to exclude any and all UM/UIM coverage based on the *DePrizio* decision, it should have either: 1) secured the written waiver of coverage required under the statute and included the waiver within the policy prior to the commencement of coverage; or 2) if Liberty Mutual wanted to remove UM/UIM coverage during the policy's term, it should have proposed a modification to such effect and offered to reduce the premium to reflect the removed coverage. In either case, it would be clear that the existence or nonexistence of UM/UIM coverage was a negotiated term of the policy.

*Beatty*, 870 N.E.2d at 551.

[20] Ackerman relies on *Beatty* for the proposition that Fireman's Fund was required to give consideration for the change in UIM coverage after the 2005 statute was enacted. However, *Beatty* is distinguishable. *Beatty* dealt with a change in coverage *during* a policy's term. Also, Beatty concerned an ambiguous UM/UIM rejection form sent by the insurer, whereas here, the removal of UM/UIM coverage took place as the result of a clear statutory enactment. Ackerman cites no authority for the proposition that Fireman's Fund was

required to offer consideration for the change in UIM coverage when the policy was renewed.

[21]     We conclude that, given Indiana Code Section 27-7-5-1.5(b), Fireman's Fund was not required to provide UM/UIM coverage in the 2008 Evansville Marine policy. Fireman's Fund was entitled to judgment as a matter of law and there were no genuine issues of material fact. The trial court erred by denying Fireman's Fund's motion for summary judgment.

## Conclusion

[22]     The trial court erred by denying Fireman's Fund's motion for summary judgment regarding the UM/UIM coverage issue. We reverse and remand.

[23]     Reversed and remanded.

Vaidik, C.J., and Mathias, J., concur.