THIRD DIVISION
March 28, 2007

No. 1-06-2216

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | Appeal from the |
| as Subrogee of Harbour Contractors, Inc., | ) | Circuit Court of |
| BAKER CONCRETE CONSTRUCTION, and | ) | Cook County. |
| NICHOLAS NOWICKI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Nos. 95 CH 10953, |
| GATEWAY CONSTRUCTION COMPANY, INC.,) | 95 CH 6802, | |
| | ) | 97 CH 1126 |
| Defendant and Counterplaintiff-Appellant | ) | |
| | ) | |
| | ) | |
| (Lexington Insurance Company, | ) | The Honorable |
| | ) | David R. Donnersberger, |
| Defendant and Counterdefendant-Appellee). ) | | Judge Presiding. |

PRESIDING JUSTICE THEIS delivered the opinion of the court:

This appeal arises from an order of the circuit court granting summary judgment in favor of defendant Lexington Insurance Company (Lexington) against plaintiff Cincinnati Insurance Company (Cincinnati)[1] and defendant, counterplaintiff Gateway Construction Company, Inc. (Gateway). On appeal, the dispute concerns whether certain parties were covered as additional insureds under the terms of Gateway's excess liability policy issued by Lexington. Gateway contends that the trial court erred in erroneously interpreting the underlying policy endorsement language, arguing that an oral promise to name someone as an additional insured, memorialized

_____

[1] Cincinnati is not a party to this appeal.

1-06-2216

in writing after the injury for which coverage is sought, is sufficient to create additional insured status under the policy. For the following reasons, we disagree and affirm the judgment of the circuit court.

BACKGROUND

Harbour Contractors, Inc. (Harbour), a general contractor, entered into an agreement with Willowbrook Center Associates to construct a Mark Shale Warehouse facility designed by architect Nicholas Nowicki. Harbour also entered into an agreement with Baker Concrete Construction (Baker), a subcontractor, under which Baker was responsible for the concrete work on the project. Baker, in turn, entered into an informal, unwritten agreement with subcontractor Gateway to install certain concrete reinforcements for the project, which agreement was later memorialized in writing and executed by Baker on June 4, 1990. On January 10, 1990, prior to the execution of the written agreement, Thomas Scully, a metal worker employed by Gateway, was injured on the jobsite.

On the date of the injury, Baker was insured under a comprehensive general liability (CGL) policy issued by Liberty Mutual Insurance Company (Liberty) and under an excess liability policy issued by Cincinnati. Harbour and Nowicki were covered as additional insureds under Baker's policies. Gateway was insured under a CGL policy issued by National Union Insurance Company (National) and under an excess liability policy issued by Lexington. It is alleged, for purposes of summary judgment, that Gateway's representative had orally agreed to name Baker, Harbour and Nowicki as additional insureds under its policy with National. The Baker/Gateway written agreement was drafted on January 26, 1990, after the injury. The original

2

agreement did not contain any additional insured requirements. Subsequently, an addendum to the agreement, dated February 7, 1990, included an additional insured provision and that contract was executed by Baker five months after the accident on June 4, 1990. A certificate of insurance naming Baker, Harbour and Nowicki as additional insureds was issued two months after the accident, on March 15, 1990.

In 1991, Scully brought suit against Harbour, Baker and Nowicki to recover for his injuries. Harbour, Baker and Nowicki tendered the defense of the suit to National. National denied its duty to defend, maintaining that Harbour, Baker and Nowicki were not additional insureds under its policy with Gateway because a written agreement to add them had not been executed at the time of Scully's accident. As a result, the defense was taken over by Liberty, Baker's primary insurer. In 1996, Scully's suit settled for $2.5 million. Liberty paid its policy limit, and Cincinnati, Baker's excess insurer, paid the remainder of the settlement. Liberty then assigned its right to seek recovery of its portion of the settlement to Cincinnati.

Meanwhile, in 1995, Harbour, Baker and Nowicki filed suit against National seeking a declaration that National had a duty to defend and indemnify them in Scully's underlying suit. They argued that they were additional insureds under National's policy with Gateway by virtue of Gateway's oral promise to make them additional insureds. Cincinnati, as the subrogee of Harbour, Baker and Nowicki, was substituted as the plaintiff in that suit. Cincinnati and National filed cross-motions for summary judgment. After the circuit court denied those motions, Cincinnati and National subsequently settled their dispute for the limits of the National policy.

Cincinnati then filed suit against Lexington and Gateway, alleging that Harbour, Baker and Nowicki were additional insureds under Gateway's policies with both National and Lexington, and, therefore, were entitled to excess coverage from Lexington. Alternatively, Cincinnati alleged that Gateway breached its oral contract with Baker when it failed to obtain insurance for Baker, Harbour and Nowicki. Gateway filed a counterclaim against Lexington alleging that it had breached its contract with Gateway in denying excess coverage to Harbour, Baker and Nowicki.

Thereafter, Gateway filed a motion for summary judgment on Cincinnati's claims against it, and also filed a motion for summary judgment with respect to its claims against Lexington. Lexington then filed a motion for summary judgment on Cincinnati's and Gateway's claims against it. The court found that the threshold issue was whether the alleged oral agreement between Gateway and Baker would be sufficient to provide additional insured coverage under the National and Lexington policies. The court held that the terms of National's policy were unambiguous and that pursuant to the language of the policy, a mere oral promise was insufficient to grant coverage. Accordingly, the circuit court denied Gateway's motions and granted summary judgment in favor of Lexington. Gateway filed its timely appeal.

ANALYSIS

A motion for summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits on file, taken in the light most favorable to the nonmoving party, establish that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). The standard of review of an order

4

granting summary judgment is *de novo*. Chatham Foot Specialists, P.C. v. Health Care Service Corp., 216 Ill. 2d 366, 376, 837 N.E.2d 48, 54-55 (2005).

The threshold issue raised by Gateway is whether the alleged oral agreement between Baker and Gateway to procure additional insured coverage is sufficient to provide coverage under the language of National's policy. In interpreting the language of the policy, we must consider that an insurance policy is a contract and, thus, the rules governing the construction of other types of contracts also apply to insurance policies. Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd., 223 Ill. 2d 407, 416, 860 N.E.2d 280, 285 (2006). The primary objective is to ascertain and give effect to the intent of the parties as expressed in the agreement. Nicor, Inc., 223 Ill. 2d at 416, 860 N.E.2d at 286. In reaching that objective, the court construes the policy as a whole, taking into account the type of insurance, the nature of the risks, and the overall purpose of the contract. Nicor, Inc., 223 Ill. 2d at 416, 860 N.E.2d at 286.

Where the provisions of the policy are clear and unambiguous, they will generally be applied as written, unless it contravenes public policy. Nicor, Inc., 223 Ill. 2d at 417, 860 N.E.2d at 286. Nevertheless, a term is not ambiguous merely because it is not defined or "because the parties can suggest creative possibilities for its meaning." Nicor, Inc., 223 Ill. 2d at 417, 860 N.E.2d at 286. Rather, it is only ambiguous "if the term is susceptible to more than one reasonable interpretation." Nicor, Inc., 223 Ill. 2d at 417, 860 N.E.2d at 286. Whether a contract is ambiguous is a question of law, subject to *de novo* review. Nicor, Inc., 223 Ill. 2d at 416, 860 N.E.2d at 285.

National's policy endorsement provides, in pertinent part as follows:

"[T]he following are Additional Insureds under this policy:

All corporations, partnership[s] and or/[sic] affiliated individuals

promised to be added as additional insured[s] under a written

contract with the Named Insured."

Gateway initially contends that the clear and unambiguous language of the policy merely requires

an oral promise to name someone as an additional insured in a written contract at a later date.

Alternatively, Gateway argues that the language could be construed to mean that the insured must

promise, *in writing*, to add the additional insured, and as a result of that ambiguity, it must be

construed in favor of coverage for Gateway.

The only reasonable interpretation of National's endorsement is that a promise in writing

is required to grant an additional insured coverage under the policy. To hold otherwise would

effectively nullify the import of the words "under a written contract" in the endorsement. A

policy must not be interpreted in a manner that renders provisions of the policy meaningless.

Atwood v. St. Paul Fire & Marine Insurance Co., 363 Ill. App. 3d 861, 864, 845 N.E.2d 68, 71

(2006). Indeed, Gateway concedes that a written agreement is ultimately necessary under the

language of the endorsement, but contemplates that the written agreement could be made "at a

later time." Gateway's interpretation would render the need for a written agreement meaningless

because it would allow the insured to reduce an oral agreement to writing after the loss has

occurred, effectively making coverage retroactive. That construct is inconsistent with the

provisions of the policy that indicate that coverage is triggered at the time of the "bodily injury."

Alternatively, Gateway's interpretation is unreasonable if it maintains that coverage is

triggered at the time of the oral promise. Under that scenario, there may ultimately be no written agreement to procure additional insured coverage, again rendering the words "under a written contract" superfluous. If that were the case, the endorsement would merely have been drafted to provide coverage for any entity the insured promised to add as an additional insured. Nevertheless, it was not drafted in that limited way. Thus, giving reasonable meaning to each term, and construing the policy as a whole, it is evident that under the terms of National's endorsement, the only reasonable interpretation of the language is that it requires a promise under a written agreement by the insured, in effect at the time of the claimed loss.

Here, there was no promise under a written agreement at the time of the accident, and no other documentation confirming additional insured coverage at the time of the accident. Even the original draft agreement between Baker and Gateway, dated after the accident, did not provide for additional insured coverage, and the subsequent addendum adding that requirement was not executed until five months after the Gateway employee was injured. A certificate of insurance was not issued until March 1990, two months after the accident. Under these circumstances, there is no coverage. See, *e.g.*, West American Insurance Co. v. J.R. Construction Co., 334 Ill. App. 3d 75, 80-81, 777 N.E.2d 610, 615 (2002) (although there was no written agreement as required by the endorsement, there was other evidence establishing a contractual commitment including a certificate of insurance, a letter from the insurer, and several internal memoranda from the insurer confirming additional insured status); United States Fire Insurance Co. v. Hartford Insurance Co., 312 Ill. App. 3d 153, 156-57, 726 N.E.2d 126, 129 (2000) (where insuring agreement requires a written contract, an oral contract alone is

1-06-2216

insufficient).

Additionally, although not alleged here, Gateway's interpretation to allow the insured to reduce an oral agreement to writing after the loss has occurred could lead to collusion by the interested parties to create coverage by manufacturing an oral promise after the injury occurs. Thus, Gateway's interpretation of National's endorsement could lead to a violation of public policy and would be contrary to the intent of the insuring agreement.

For all of the foregoing reasons, a mere oral promise to add Harbour, Baker and Nowicki to the National policy as additional insureds was insufficient under the terms of the policy to bind National to provide them with coverage for the accident. As a result, there is also no coverage under Lexington's excess policy as it only covers those additional insureds covered under National's policy. We therefore need not address Lexington's additional contentions.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

GREIMAN and CUNNINGHAM, JJ., concur.

CINCINNATI INSURANCE COMPANY, as Subrogee of HARBOUR CONTRACTORS, INC., BAKER CONTRACTORS, INC., and NICHOLAS NOWICKI,

Plaintiffs,

v.

GATEWAY CONSTRUCTION COMPANY, INC.,

Defendant - Counter Plaintiff - Appellant,

(Lexington Insurance Company,

Defendant - Counter Defendant - Appellee.)

No. 1-06-2216

Appellate Court of Illinois
First District, Third Division

Filed: March 28, 2007

PRESIDING JUSTICE THEIS delivered the opinion of the court.

Greiman and Cunningham, JJ., concur.

Appeal from the Circuit Court of Cook County
Honorable David R. Donnersberger, Judge Presiding

| | |
|---|---|
| For DEFENDANTS - APPELLANTS | William J. McKenna, Jr. |
| | Michael S. Shapiro |
| | Foley & Lardner LLP |
| | 321 N. Clark St. |
| | Chicago, IL 60610 |
| | |
| For PLAINTIFF - APPELLEE | James P. McCarthy |
| | Patricia M. Kelly |
| | Gunty & McCarthy |
| | 150 S. Wacker Dr. |
| | Chicago, IL 60606 |