In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1405

CINCINNATI INSURANCE CO.,

*Plaintiff-Appellee,*

*v.*

VITA FOOD PRODUCTS, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 5181 — **Edmond E. Chang**, *Judge.*

ARGUED NOVEMBER 2, 2015 — DECIDED DECEMBER 16, 2015

Before BAUER, POSNER, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* The Cincinnati Insurance Company issued a liability insurance policy to a company called Painters USA for a one-year period beginning on January 15, 2011. It has brought this suit to try to avoid having to provide coverage to another company, Vita Food Products, which claims to be an "additional insured"—that is, to also be covered by the liability insurance policy that Cincinnati had issued to Painters.

The policy covered "bodily injury" caused by an "occurrence" (an accident, presumably) for which the insured was legally liable to the injured person. But in addition the policy allowed the insured to add an "additional insured" to the policy by an oral agreement (or a written one, but this case involves an oral agreement), provided that the oral agreement preceded the "occurrence" and that "a certificate of insurance showing that person or organization as an additional insured has been issued." No permission from Cincinnati Insurance is required for the primary insured to create an additional insured, provided that the two insureds have a relationship that makes the addition of a second insured consistent with the nature and aims of the policy, as when the original insured is providing products or services to the additional insured (as occurred in this case).

While Cincinnati's insurance policy was in force, Painters was hired by Vita Food Products to do painting on Vita's premises. According to Vita, Painters agreed to add Vita as an additional insured—orally. Vita doubtless was concerned that if one of Painters' workers was injured on Vita's premises, the worker would file a tort suit against Vita—he couldn't sue Painters because an employee normally has only a workers' compensation remedy against his employer and not a common law tort remedy.

In fact, one of Painters' workers, Nardo Ovando, did sue Vita, for negligent maintenance of its premises. It was soon after Painters began doing work for Vita and before there was any written confirmation of the oral agreement that Ovando fell while working at Vita. He sustained a terrible injury, and remains in a coma to this day. A tort suit was filed against Vita on Ovando's behalf and that of his wife

(Karina Baez, who claims loss of consortium). The suit before us, however, is a diversity suit brought by the insurance company to obtain a declaration that Vita was not covered by the policy that the company had issued to Painters. The company points out that the accident, even if it occurred after the oral agreement that added Vita as a party insured, occurred before the preparation of the certificate confirming Vita's status as an additional insured. Ovando and Baez are named as additional defendants, since as plaintiffs in the state court tort suit against Vita they might claim an entitlement to share in any insurance proceeds that Vita receives in order to help it pay damages to the plaintiffs, should Vita be held liable for Ovando's accident.

Painters had requested the certificate within hours after Ovando's injury, and an insurance agent for Cincinnati Insurance had issued it to Vita the next day. But the district judge agreed with Cincinnati that the certificate had come too late—that until it was prepared and signed the "additional insured" was not actually insured. And so the judge granted summary judgment in favor of the insurance company, precipitating this appeal by Vita. The insurance company also denied, and continues to deny, that the oral agreement adding Vita as an insured preceded the accident. But there was conflicting evidence on that point, and the district judge therefore correctly ruled that the issue could not be resolved on a motion for summary judgment.

But his grant of summary judgment in favor of Cincinnati Insurance was premature. The reference in the insurance policy to a certificate of insurance is ambiguous. It could, as Cincinnati argues, be regarded as a prerequisite to coverage of the additional insured, but equally it could be

regarded as intended merely to memorialize the oral agree-
ment, in which event the date of the certificate would not
matter. A third possibility—which like the second supports
Vita's position—is that the oral agreement must be memori-
alized in writing before the insured can file a claim.

The district judge invoked "the requirement that cover-
age is extended only 'where a certificate has been issued.'"
But that's not what the policy says. The oral agreement has
to precede the accident that gives rise to the insured's claim,
but there is no indication of when the certificate of insurance
has to be issued. We have just suggested that a permissible
interpretation would be that it must be issued before the ad-
ditional insured files a claim with the insurance company, as
it was in this case.

An ambiguous insurance contract is interpreted "against
the drafter of the policy and in favor of coverage," *Outboard
Marine Corp. v. Liberty Mutual Ins. Co.*, 607 N.E.2d 1204, 1217–
20 (Ill. 1992), in recognition that such contracts are drafted
by, and therefore likely to be slanted in favor of, the insurer
and that the insured rarely has any bargaining power be-
cause such contracts are usually industry-wide standard-
form contracts, the terms of which therefore are not negoti-
ated anew every time a person or firm seeks insurance cov-
erage. The commercial general liability policy issued by Cin-
cinnati Insurance to Painters is such a contract, for it is of-
fered to potential insureds on a take-it-or-leave-it basis. Since
the reference in the policy to the certificate of insurance is
ambiguous, the judge erred in holding that the policy's
"clear and unambiguous" language proves that Vita was not
an additional insured. The pertinent language was neither
clear nor unambiguous. The certificate may be useful in

heading off a dispute over whether there really is an oral agreement. But the fulfillment of that purpose would require only that the certificate precede the additional insured's claim for the proceeds of the insurance policy, and the certificate in this case did precede the claim.

Cincinnati Insurance argues that requiring the certificate before a liability-triggering event occurs is necessary to protect the insurer against fakery by the insured. After Ovando's accident Painters would have been desperate for Vita to be acknowledged as an additional insured, as otherwise Vita, facing suit by Ovando and his wife, might try to drag Painters into the suit, accusing it of responsibility for the accident. The certificate was not issued by Painters or Vita, however, but instead, as we noted earlier, by an insurance agent on behalf of Cincinnati Insurance. The agent would not be willing to backdate a certificate of insurance at the insured's (Painters') request, so requiring that the certificate precede the accident would provide extra protection against fakery. Oral agreements are valid contracts, however, and the insurance policy is explicit that an oral agreement is sufficient to add an additional insured.

The certificate of insurance, in contrast, is not a contract. It states that it "is issued as a matter of information only," "confers no rights upon the certificate holder," "does not affirmatively or negatively amend, extend or alter the coverage afforded by the policies," and "does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder." Cincinnati Insurance calls it a precondition to insuring Vita against liability for the accident to Ovando. Were it a precondition it would indeed amend the coverage provided by the policy

that Cincinnati Insurance issued to Painters. But the language of the certificate indicates that it isn't a precondition to anything; it's just information.

The insurance company cites a similar case that it won, *Cincinnati Ins. Co. v. Gateway Construction Co.*, 865 N.E. 2d 395 (Ill. App. 2007), but overlooks a crucial difference: in *Gateway* the policy did not permit an *oral* agreement to add an additional insured. See *id*. at 399. Our interpretation of the additional-insured provision in the present case is supported by such cases as *ATOFINA Petrochemicals, Inc. v. Continental Casualty Co.*, 185 S.W.3d 440, 443–44 (Tex. 2005), and *United States Fidelity & Guaranty Co. v. Shorenstein Realty Services, LP*, 591 F. Supp. 2d 966, 968–70 (N.D. Ill. 2008) (Illinois law).

So if Vita can prove that there was an oral agreement to add it as an additional insured prior to the accident to Ovando, it will be entitled to coverage under Cincinnati Insurance's policy. The judgment of the district court in favor of the insurance company is therefore REVERSED and the case REMANDED for further proceedings consistent with this opinion.